## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AUSTYN POSADA,
        Plaintiff

    v.

OTTAWA TOWNSHIP HIGH SCHOOL
DISTRICT 140,
        Defendant

No. 22 CV 3099

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff Austyn Posada filed suit against Ottawa Township High School District 140 (the "District"), alleging that the District violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, when it failed to promote him to a full-time custodial or grounds and maintenance position. The District now moves for summary judgment on Posada's ADA claims. (R. 25.)[1] For the reasons below, the District's motion is granted.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions, the materials cited therein, and other aspects of the record in this case. All facts are viewed in the light most favorable to the non-movant and are genuinely undisputed unless otherwise noted. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3).

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Plaintiff Austyn Posada is a twenty-five-year-old man with autism. (District SOF ¶ 1; R. 27-1 ("Posada Dep.") at 9:3–4, 11:8–9.) Posada attended high school within the District and participated in the District's Transition Program following his graduation. (District SOF ¶ 3; Posada Dep at 9:7–19.) The Transitions Program is a four-year life skills and job training program for students graduating from the District's Special Education Department. (District SOF ¶¶ 3–4; R. 27-3 ("Johnson Dep.") at 17:6–23.)

On September 19, 2016, while participating in the Transitions Program, the District's Board of Education hired Posada as a part-time custodian. (District SOF ¶ 6; R. 27-4 at 4.) Posada was recommended for hire by the Director of Facilities at Ottawa High School, Brad Johnson. (District SOF ¶ 17; Johnson Dep. at 16:15–17:1.) As Director of Facilities, Johnson is responsible for creating custodial job postings when there is a vacancy, reviewing applications, interviewing candidates, and making formal hiring recommendations. (District SOF ¶¶ 17, 32, 34; Johnson Dep. 11:10–17.) Because Posada was participating in the Transitions Program at the time he was hired, he was accompanied by a job coach in performing various tasks around the school, including emptying the trash in the cafeteria, vacuuming the rugs in the school's entryways, using an "autoscrubber" (*i.e.*, an automated floor cleaning machine) to clean the cafeteria floors, sweeping the gym floors, and cleaning the school's bathrooms. (District SOF ¶¶ 7–8; Posada Dep. at 16:22–19:19, 25:19–27:4; Johnson Dep. at 19:1–20:3.)

Posada continued to work as a part-time custodian for the District even after completing the Transitions Program. (District SOF ¶¶ 10–11; Johnson Dep. at 21:18–22:2.) His duties remained largely the same, though he was sometimes also asked to perform "fill-in" duties for full-time custodians absent from work, such as sweeping a hallway or emptying a garbage can outside of the cafeteria. (District SOF ¶ 9; Johnson Dep. at 22:10–18, 24:14–21.) Further, because work assistance was only a feature of the Transitions Program, Posada was no longer accompanied by a job coach in performing his assignments. (District SOF ¶ 10; Johnson Dep. at 22:3–7.) To fill this void, full-time custodians accompanied Posada on assignments to ensure his work was complete. (District SOF ¶¶ 11–12; Posada Dep. at 21:8–24, 24:21–25:18, 27:12–22; Johnson Dep. at 79:2–22.)

Sometime in 2018, Johnson learned that at least four full-time custodians would be retiring. (District SOF ¶ 18; Johnson Dep. 87:10–17.) In preparation for these vacancies, Johnson revised and published a job description. (District SOF ¶¶ 18–19; Johnson Dep. at 85:12–86-5.) To do so, he relied on his twenty years of experience working in the District and referred to job descriptions from other school districts in formulating qualifications. (District SOF ¶ 19; Johnson Dep. 86:1–16.) Among the listed qualifications was the requirement that full-time custodians possess a valid driver's license. (District SOF ¶ 23; R. 27-1 at 47.) Johnson also created a grounds and maintenance job description, which listed different duties and qualifications than that of a full-time custodian. (District SOF ¶¶ 32, 52; R. 27-1 at 87.) In addition to possessing a valid driver's license, the grounds and maintenance

position also required that applicants obtain an Illinois pesticide license. (District SOF ¶ 52; R. 27-1 at 87.)

Since late 2020, the District has posted six full-time custodian vacancies and one grounds and maintenance vacancy. (District SOF ¶ 40; Johnson Dep. at 88:22–89:4.) For each of the seven vacancies, the District received between 40 and 106 applications. (District SOF ¶ 40; 33:9–14.) Posada formally applied for three of the full-time custodian vacancies. (District SOF ¶¶ 42, 68, 72; R. 27-1 at 53, 63–66; R. 27-3 at 36–38.) For at least two other vacancies, Posada expressed his interest in being considered for the position to Johnson but did not submit a new application. (District SOF ¶¶ 59, 62; Posada Dep. at 88:11–18, 99:12–17; Johnson Dep. at 46:13–24, 51:14–20.) Johnson interviewed Posada for a position on three different occasions. (District SOF ¶¶ 44, 64, 70; Johnson Dep. at 32:15–17, 106:8–10, 115:5–7.) Posada was not hired for any of the seven vacancies. (District SOF ¶¶ 48, 51, 57, 61, 67, 71, 74.)

On January 6, 2022, Posada filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the District discriminated against him because of his disability in violation of the ADA. (District SOF ¶ 77; R. 27-16 ("EEOC Charge") at 2.) The EEOC issued Posada a notice of his right to sue on March 7, 2022. (R. 1-1 ("Compl.") at 5.) Posada filed suit in the Circuit Court of the Thirteenth Judicial Circuit, LaSalle County, Illinois, on April 28, 2022. (*See generally, id*.) The District subsequently removed the case to federal court. (R. 1.) Pending before the Court is the District's motion for summary judgment on Posada's ADA claims. (R. 25.)

Before proceeding, the Court notes that Posada's failure to follow Local Rule 56.1 circumscribes its review of the facts. *See Flint v. City of Belvidere*, 791 F.3d 764, 766 (7th Cir. 2015.) Posada did not file a Local Rule 56.1(b)(2) response to the District's statement of undisputed facts, nor did he file a Local Rule 56.1(b)(3) statement of additional facts. Instead, Posada "incorporated" the District's statement of facts and added additional, disputed facts to the background section of his opposition brief. (R. 29 at 2–4.) This is improper. "Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Dunhill Asset Servs. III, LLC v. Tinberg*, No. 09 C 5634, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) (citing *Perez v. Town of Cicero,* No. 06 C 4981, 2011 WL 4626034, at *2 (N.D. Ill. Sept. 30, 2011)); *see also Bancorp Bank v. Metro. Diagnostic Imaging, Inc.*, No. 20 C 1841, 2023 WL 1800082, at *10 (quoting *Midwest Imps. Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)) (explaining that Local Rule 56.1 provides the only "acceptable means of . . . presenting additional facts" and "[s]imply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court.").

Notwithstanding Posada's procedural error, "[t]he typical incantation—that at summary judgment all facts are construed and all inferences drawn in the light most favorable to the non-movant, *Rosenbaum v. White*, 692 F.3d 593, 599 (7th Cir. 2012)— must [ ] be applied." *Flint*, 791 F.3d at 767 (emphasis omitted). Accordingly, the Court considers, in the light most favorable to Posada, "only the facts (and inferences drawn from them) presented in accordance with Local Rule 56.1." *Id.*

5

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). Although the movant bears the burden of showing that summary judgment is appropriate, the nonmovant "may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits" in opposing the motion. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). Instead, the nonmoving party "must go beyond the pleadings and support [his] contentions with proper documentary evidence." *Id.* Mere speculation or assumption does not suffice to overcome a motion for summary judgment. *See SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)) ("It is well-settled that speculation may not be used to manufacture a genuine issue of material fact.").

**ANALYSIS**

Posada claims that the District discriminated against him on the basis of his disability in violation of the ADA when it refused to hire him for one of the full-time custodian or grounds and maintenance positions that were posted from March 2021

through September 2022.[2] The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application [and] hiring . . .." 42 U.S.C. § 12112(a). "To establish a violation of the ADA, an employee must show '1) that [he] is disabled; 2) that [he] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that [his] employer took an adverse job action against [him] because of [his] disability. . ..'" *Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 286–87 (7th Cir. 2015) (quoting *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009)). To withstand the District's motion for summary judgment, Posada must present evidence that, if believed by a trier of fact, would establish each of the elements of his claim. *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013).

The District does not challenge that Posada is a disabled individual entitled to protection under the ADA. (R. 26 at 5; R. 29 at 5.) Rather, the parties' dispute centers around the second and third elements of Posada's disability discrimination claim. The District contends that Posada cannot establish that he was qualified to perform the essential functions of the full-time custodian position, nor that the District took an adverse job action against him because of his disability. (R. 26 at 5.)

---

[2] Posada concedes that any claims that accrued before March 12, 2021, *i.e.*, 300 days before he filed his EEOC Charge on January 6, 2022, are time-barred. (*See* R. 28 ¶ 4); *see also Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239–41 (7th Cir. 2004) (explaining that alleged discriminatory acts that do not fall within 300-day window for bringing an EEOC charge are time-barred); *see also* 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a). Because Cody Hughes was hired for a full-time custodian position on January 25, 2021, (District SOF ¶ 48), any claims related to his hiring are untimely.

### A.   Whether Posada is a Qualified Individual with a Disability

The District first argues that Posada cannot show that he was qualified to perform the essential functions of the custodial or grounds and maintenance positions. (R. 26 at 5–8.) The ADA prohibits discrimination against a "qualified individual on the basis of disability." *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) (citing 42 U.S.C. § 12112(a)). A qualified individual is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* (citing 42 U.S.C. § 12111(8)).

The Court applies a two-step inquiry to determine whether an employee is a "qualified individual." *See Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 417 (7th Cir. 2016). First, the Court considers whether the individual "satisfies the prerequisites for the position[,]" such as possessing the appropriate "educational background, employment experience, particular skills and licenses." *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241–42 (7th Cir. 2018); *see also Basith v. Cook Cnty.*, 241 F.3d 919, 927 (7th Cir. 2001). "If he does," then the Court determines "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Basith*, 241 F.3d at 927 (internal quotation marks and citation omitted).

The plaintiff "bears the initial burden of establishing that [he] was a qualified individual who could perform the essential functions of [the] position," either with or without reasonable accommodation. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014) (citing *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533

(7th Cir. 2013)). Thus, to avoid summary judgment on his ADA claim, Posada must establish a genuine factual dispute with respect to both parts of the qualified individual inquiry: "prerequisites" and "essential functions." *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780–81 (7th Cir. 2007).

The District argues that Posada is not a "qualified individual" because he does not possess a valid driver's license, which is a prerequisite for the full-time custodian and grounds and maintenance positions. (R. 26 at 6–8.) "Employers are entitled to define the core qualifications for a position." *Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998). In doing so, the employer may define the job in question, "in terms of both its essential scope and the qualifications required for it, . . . as long as such qualifications are "job-related and consistent with business necessity." *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 929 (7th Cir. 2001).

Here, the record shows that both of the custodial job descriptions included "valid driver's license" as a requirement for the position. Johnson created the full-time custodian job description before Posada expressed an interest in the role based on his review of job descriptions from other school districts, his personal experience in the field, and his consideration of the job responsibilities that District custodians are expected to perform. (District SOF ¶¶ 19–20.) Further, the undisputed evidence in the record demonstrates that District custodians perform tasks that require a valid driver's license. The District owns multiple vehicles, including vans, a Chevy Suburban, and activity buses. (*Id.* ¶ 24.) Custodians drive these vehicles both on and off school property, including to Mendota, Illinois for state-mandated safety

inspections. (*Id.* ¶ 24.) The District also owns multiple John Deere Gator utility vehicles that custodians drive on a regular basis for snow removal, hauling salt, and athletic event setup and cleanup. (*Id.* ¶ 25.) The Gators are stored in the District's ground shop, which is accessible only by a public roadway, thus necessitating a driver's license to retrieve and return the Gator to the shop. (*Id.* ¶ 26.)

Posada does not dispute that he does not have a valid driver's license,[3] nor that the custodial job descriptions listed a driver's license as a requirement for the role. (R. 29 at 6.) Rather, he challenges the legitimacy of the prerequisite, arguing that a previously employed maintenance worker was able to maintain his employment with the District notwithstanding the alleged suspension of his driver's license. (*Id.* at 7.) Even if Posada had properly presented his evidence under Local Rule 56.1, the only evidence that he points to in support of this contention is inadmissible hearsay. (R. 29 at 7.) Hearsay is inadmissible at summary judgment to the same extent that it is inadmissible at trial. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). And there is no evidence in the record establishing when this employee was hired, what role he was hired for, or whether his license was actually suspended or revoked. (*See, e.g.,* R. 29 at 7 (acknowledging that the circumstances regarding the maintenance worker and his licensure are "unclear in the current record").)

Posada's other arguments are equally unavailing. Indeed, he contends, without proper evidentiary support, that the driving duties required of full-time custodians and groundskeepers are either "extremely rarely performed or functions which could

---

[3] Posada also does not dispute that he does not possess an Illinois pesticide license, as is required for the grounds and maintenance position. (*See generally,* R. 29.)

be easily accommodated through simply having another custodial staff manage the aspect which requires a driver's license." (*Id.*) Such arguments, which speak more toward the "essential function" prong of the inquiry, amount to nothing more than mere speculation or assumption and, thus, do not suffice to create a genuine issue of material fact. *See SportFuel, Inc.*, 932 F.3d at 601.

Finally, Posada suggests that, had he known the driver's license requirement was the only factor preventing him from being qualified for the full-time custodian position, he might have "reasonably follow[ed] through with the process of obtaining [a] license," despite having a fear of driving on roads. (R. 29 at 8.) This argument is a non-starter. Whether an individual is qualified for their position is determined "as of the time of the employment decision." *Leech v. Maine Township Sch. Dist. 207*, No. 19 C 1826, 2023 WL 6388159, at *2 (N.D. Ill. Sept. 29, 2023) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996)). Posada's conclusory and unsupported opinion that he could obtain a driver's license knowing that he would only be required to drive in a "decidedly lower-risk context" is not sufficient to create a genuine fact issue as to whether he meets the prerequisites for the District's custodial positions. *See e.g., Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289 (7th Cir. 2015) (explaining that a "conclusory and untested opinion/hope that the proposed . . . accommodation would enable [the plaintiffs] to perform the essential functions of their jobs" was insufficient to satisfy their burden on summary judgment).

In sum, Posada did not have a driver's license at the time of hiring and, thus, did not satisfy the pre-requisites for either the full-time custodian or grounds and

maintenance positions. He has therefore failed to meet his burden as to the first prong of the "qualified individual" inquiry. Because there is no evidence properly before the Court that creates a genuine issue of material fact as to whether Posada is a "qualified individual" under the ADA, the District is entitled to judgment as a matter of law. *See Shaw v. Ill. SportService, Inc.*, No. 19 C 8415, 2021 WL 3487348, at *6 (N.D. Ill. Aug. 9, 2021), *aff'd*, No. 21-2645, 2023 WL 4582439 (7th Cir. July 18, 2023) (citing *Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL 1574246, at *10 (N.D. Ill. July 12, 2004)) ("A plaintiff's failure to satisfy step one of the two-part ['qualified individual'] analysis requires a grant of summary judgment in favor of the defendant.")

### B. Whether the District Took an Adverse Job Action Against Posada Because of His Disability

Even assuming, however, that Posada is a "qualified individual" with a disability within the meaning of the ADA, the Court cannot conclude, based on the record before it, that he has established the remainder of his *prima facie* case. To survive a motion for summary judgment on an employment discrimination claim under the ADA, Posada must present evidence that would allow a reasonable jury to find that his protected characteristic caused the adverse employment action. *See Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022) (citing *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In this case, as in many discrimination cases, "'the sole question that matters' is causation: whether a statutorily proscribed factor caused a failure to hire." *Joll v. Valparaiso Comm. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) (quoting *Ortiz*, 834 F.3d

at 766). There is no distinction between "direct" or "indirect" evidence when evaluating discrimination claims, as both types of evidence may be used to support an inference of causation and, thus, intent. *Id.* at 929; *see also Ortiz*, 834 F.3d at 764–65. The Court is not limited to any particular test or rubric in reviewing a discrimination claim. *See Brooks*, 39 F.4th at 434 (explaining that the "tests and rubrics for viewing discrimination claims . . . are all merely convenient ways to organize [the court's] thoughts"). Rather, the Court must simply consider the evidence as a whole in deciding whether to grant summary judgment. *See Terry v. Gary Comm. Sch. Corp.*, 910 F.3d 1000, 1005 (7th Cir. 2018); *see also Ortiz*, 834 F.3d at 765 ("Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . ..").

In support of his discrimination claim, Posada relies on statements alleged to have been made by the District's superintendent, Dr. Michael Cushing, during a phone call with Posada's mother, Wendy Renteria, in which Cushing attributed the decision not to hire Posada to his disability. (R. 29 at 8–12.) The statements are memorialized in a narrative attached to Posada's Illinois Department of Human Rights ("IDHR") complaint in which Posada recounts his mother's explanation to him of the phone call that she had with Cushing.[4] (R. 29-3 at 3.) The narrative states that Cushing told Renteria that Posada did not fit the criteria for the full-time custodian position because of his "inabilities" and that Posada "would be incapable of handling

---

[4] Although the narrative is written from the perspective of Posada, Renteria acknowledged during her deposition testimony that she is the one who authored the statement and filed the IDHR complaint, as well as the EEOC Charge. (Renteria Dep. at 50:14–23, 51:8–17, 59:12–19.)

the day-to-day functions of the position" because he is "delayed." (*Id.*) Cushing disputes that he made such statements during this call. (R. 27-5 ("Cushing Dep.") at 25:11–27:3.)

As the District correctly notes, Posada presents Cushing's statement only in his responsive memorandum, which is insufficient to put the issue before the Court and controvert the evidence supplied by the District. *See Midwest Imps. Ltd*, 71 F.3d at 1317; *see also Dunhill Asset Servs. III*, 2012 WL 3028334, at *3. Even if Posada had properly presented this evidence in accordance with Local Rule 56.1, the evidence, viewed as a whole, demonstrates that Posada cannot withstand summary judgment.

The question on summary judgment "is 'not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *David Copperfield's Disappearing, Inc., v. Haddon Advertising Agency, Inc.*, 897 F.2d 288, 291 (7th Cir. 1990) (quoting *Gunning v. Cooley*, 281 U.S. 90, 94 (1930)). In other words, "a dispute of fact may exist, but if no reasonable jury could possibly conclude in favor of the nonmovant, then summary judgment remains appropriate." *Plemmons v. Montanez*, 605 F.Supp.3d 1070, 1076 (N.D. Ill. 2022). Such is the case here, where Posada has produced only a mere scintilla of evidence to support his claims. *See id.*

In this case, Posada produces only his mother's disputed statement regarding her conversation with Cushing. Not only is the statement uncorroborated, but there is no evidence in the record demonstrating that Cushing had any type of decision-

making role in the District's hiring process. *See, e.g., Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 378–79 (7th Cir. 2011) (explaining that to prevail on employment discrimination claim, the plaintiff must provide evidence that the decisionmaker, *i.e.,* the person responsible for the contested decision, acted for a prohibited reason); *Butler v. Ill. Dep't of Transp.*, 667 F.Supp.2d 825, 832–33 (N.D. Ill. 2009) (finding employee's ADA claim could not survive summary judgment where the only evidence of discrimination was an alleged statement made by a supervisor not involved in termination process). Rather, Johnson, as Director of Facilities, was responsible for creating the job posting, reviewing applications, interviewing candidates, and making a formal hiring recommendation. (District SOF ¶¶ 32, 34, 36, 39.) The only role that Cushing played in this process was acting as a conduit through which Johnson's hiring recommendation was passed on to the Board of Education, who had final decision-making authority. (*Id.* ¶¶ 31, 35, 37.) Cushing never instructed Johnson on who he should recommend for hire, and he always relayed Johnson's recommendation to the Board who, in turn, has always hired the recommended applicant. (*Id.* ¶ 39.)

Posada offers no evidence to indicate that Cushing was involved in the District's hiring process; rather he proceeds on two theories: "either Brad Johnson is more forthcoming and conversational to Cushing about Johnson's own thought process in recommending candidates . . ., or Cushing has more input and opinion about the decision than the role of merely conveying Johnson's opinion to the School Board." (R. 29 at 11.) Posada, however, cannot manufacture a genuine issue of

15

material fact by simply positing theories that are supported only by speculation and conjecture. *See SportFuel, Inc.*, 932 F.3d at 601. Given the uncontroverted evidence that Cushing had no substantive role in the decision-making process and was not privy to the considerations that informed the ultimate hiring decision, his disputed testimony as to the reasons why Posada was not hired, even if credited, is mere speculation and is not sufficient to withstand summary judgment.

Moreover, in viewing the evidence as a whole, the record demonstrates that the District's decision to hire other candidates was based on legitimate, non-discriminatory reasons. For example, the District explains that the candidates that were hired to fill the full-time custodial and grounds and maintenance positions were better qualified for the roles because they possessed the requisite licensure, including a valid driver's license, had relevant prior work experience, and demonstrated their knowledge of chemical mixing. These candidates included:

- Karol Baker, who was hired as a full-time custodian on February 1, 2021, and had relevant prior work experience as a custodian in the community college and hospital setting, and answered all questions correctly on the skills test that was administered as part of the interview;

- Cal Kasik, who was hired for a grounds and maintenance position on July 21, 2021, and had relevant work experience in athletic field maintenance and irrigation systems, and had an Illinois Pesticide License;

- Jennifer Dischler, who was hired as a full-time custodian on September 20, 2021, and had previously worked as a custodian in the District and had extensive experience working with chemicals from her time in the Illinois Army National Guard;

- Mark Spika, who was hired as a full-time custodian on December 13, 2021, and had prior work experience working with landscaping and snowplowing equipment, and demonstrated his knowledge of chemical mixing on the skills test;

16

- Mike Sereno, who was hired as a full-time custodian on March 14, 2022, and had prior experience maintaining the operations of a resort and scored well on the skills test;

- Hanna Roalson, who was hired as a full-time custodian on September 19, 2022, and had prior work experience using heavy equipment and maintaining athletic fields, and scored highly on the skills test.

(District SOF ¶¶ 50–51, 55–57, 60–61, 63–64, 67, 69–71, 73–74.)

By contrast, in addition to not having the proper licensure, Posada had more limited work experience than the candidates that were hired. For example, while Posada had relevant experience cleaning the school cafeteria and bathrooms, and shoveling and salting the sidewalks from his part-time position, he did not have experience using floor stripping chemicals, securing the school building, maintaining athletic fields, or inspecting school facilities and equipment—all of which are tasks required of full-time custodians. (District SOF ¶¶ 22, 28–30.) Posada's lack of familiarity with mixing chemicals was reflected on the skills test that was administered to assess candidates' knowledge of working with chemicals.[5] (*Id.* at ¶¶ 47, 65, 70.) The District further points to complaints from the District Staff about Posada's job performance, and his receipt of a written warning for leaving a door unlocked and allowing two unauthorized individuals to enter the school building as other considerations that factored into the hiring decision. (District SOF ¶¶ 12, 14–16, 29.)

---

[5] The Court notes that all of the candidates who were hired were required to take the skills test, with the exception of two individuals—Jennifer Dischler and Cal Kasik—who demonstrated their working knowledge of chemical mixing through their prior work experience and their Illinois pesticide licensure, respectively. (Johnson Dep. at 102:8–103:22.)

Posada fails to dispute any of the evidence proffered by the District demonstrating that there existed legitimate, nondiscriminatory reasons for not promoting him to a full-time position. Viewing the evidence as a whole, and in the light most favorable to Posada, the Court does not find that Posada has established a *prima facie* case of employment discrimination under the ADA. Accordingly, the Court grants summary judgment in favor of the District.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment [25] is granted.

Date: 3/11/2024

JEREMY C. DANIEL
United States District Judge

18